Argued and submitted December 19, 2017, supplemental judgment vacated and remanded September 18, 2019

In the Matter of J. M. E.,
a Youth.
STATE OF OREGON,
*Respondent,*

*v.*

J. M. E.,
*Appellant.*

Marion County Circuit Court
15JU07122; A162969

451 P3d 1018

Youth appeals a supplemental judgment ordering him to pay restitution after causing physical injury to the victim. Youth argues that the juvenile court erred in ordering restitution for a hospital bill in the absence of evidence that the bill was reasonable. The state disagrees, arguing that the Crime Victim Compensation Program (CVCP) payment of the medical bill in question is proof that the bill was reasonable because the CVCP is under a statutory duty to pay only reasonable expenses. *Held*: The juvenile court erred. Payment of medical bills in accordance with the statutory and regulatory scheme governing the CVCP does not, in the absence of other evidence, support the determination that those bills are reasonable. Because, in this case, the state produced no other evidence as to the reasonableness of the medical bill in question, the trial court erred in including that portion of the victim's medical expenses in the supplemental judgment.

Supplemental judgment vacated and remanded.

Heidi O. Strauch, Judge pro tempore.

George W. Kelly argued the cause and filed the brief for appellant.

Sharia Mayfield, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Greg Rios, Assistant Attorney General.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge.

DEHOOG, P. J.

Supplemental judgment vacated and remanded.

**DEHOOG, P. J.**

Youth appeals a supplemental judgment ordering him to pay restitution, arguing that the juvenile court erred in ordering restitution for a hospital bill in the absence of evidence that the bill was reasonable. The state disagrees, relying on the fact that the Crime Victim Compensation Program (CVCP)—which is under a statutory duty to pay only reasonable expenses—paid the medical bill in question as proof that the bill was reasonable. We agree with youth that, on this record, there is insufficient evidence to prove the hospital bill's reasonableness. The court, therefore, erred in including that amount in the restitution award, and we, therefore, vacate and remand the supplemental judgment.

The relevant facts are undisputed. The court found that evidence established, beyond a reasonable doubt, that youth committed acts which, had youth been an adult, would have constituted fourth-degree assault. Specifically, youth punched the victim in the nose, causing him physical injury. After a hearing, the court ordered youth to pay $13,065.49 as restitution for the victim's medical expenses. That award was the sum of several different medical expenses that the victim incurred. Youth, however, challenges only a portion of that restitution award: $4,745.49 for treatment at Silverton Hospital. CVCP paid that bill.

The state did not present any evidence at the restitution hearing as to the reasonableness of the medical bill incurred at Silverton Hospital.[1] Instead, in closing, the state argued:

> "And I would also argue that Crime Victim's Compensation, just like insurance companies, are not going to pay more than what they feel is necessary. It's in their best interest to only pay amounts that they deem reasonable. And so they did not pay the full amount for the hospital bill; however, the hospital bill is not asking for the difference in that.

---

[1] The state did present evidence as to the reasonableness of the *other* medical bills incurred. For example, two witnesses from the billing departments of two other treatment providers explained how their offices decide what charges to impose based on standards in the medical community and why those charges are reasonable.

"But although I didn't have anyone to testify for Crime Victim Compensation, I would argue that they would only pay what they feel is reasonable from the information that they've received."

Youth disagreed with the state, focusing on the state's concession that it presented "no evidence of any kind" as to the reasonableness of the Silverton Hospital bill. Ultimately, the court agreed with the state, explaining:

"With regard to the Crime Victim's Compensation, I do find [the state's] argument persuasive that the Crime Victim's Compensation Fund does have an incentive to pay only reasonable expenses. There's certainly no guarantee they will ever get that back, although clearly today they're trying to do so. But even if I order restitution it may take a very long time for that actually to come back. So realistically speaking, I think the charges accepted by the Crime Victim's Fund are reasonable."

Youth appeals the resulting supplemental judgment.

On appeal, youth argues that the court erred in imposing the $4,745.49 restitution for the treatment at Silverton Hospital, because the state failed to produce any evidence of the hospital bill's reasonableness beyond the bill itself. In response, the state argues that proof that CVCP paid the bill "presumptively establishes" that bill's reasonableness.

We review orders of restitution for errors of law. *State v. McClelland*, 278 Or App 138, 141, 372 P3d 614 (2016), *rev den*, 360 Or 423 (2016). "We are bound by the trial court's factual findings if they are supported by any evidence in the record[.]" *State v. Pumphrey*, 266 Or App 729, 730, 338 P3d 819 (2014), *rev den*, 357 Or 112 (2015).

Restitution and the process by which the state can seek to recover it against a youth offender are governed by statute. Specifically, ORS 419C.450(1)(a) provides, in relevant part:

"It is the policy of the State of Oregon to encourage and promote the payment of restitution and other obligations by youth offenders as well as by adult offenders. *** If the court finds from the evidence presented that a victim suffered injury, loss or damage, in addition to any other sanction it may impose, the court shall:

"(A)   Include in the judgment a requirement that the youth offender pay the victim restitution in a specific amount that equals the full amount of the victim's injury, loss or damage as determined by the court[.]"

Although ORS 419C.450 does not define "restitution," ORS 419A.004(26)[2] provides that, as used in the Juvenile Code, "'[r]estitution' has the meaning given that term in ORS 137.103." In turn, under ORS 137.103(3), restitution is defined, in relevant part, as the "full, partial or nominal payment of economic damages to a victim."

We held in *State v. E. V.*, 240 Or App 298, 246 P3d 78 (2010), *rev den*, 350 Or 130 (2011), that, by making the Criminal Code's definition of "restitution" part of the Juvenile Code, the legislature had also incorporated "the whole definition, including the statutory definitions of its component parts." In applying the Criminal Code definition of "victim," ORS 137.103(4), to the youth in that case, we reasoned that,

"[t]o conclude otherwise would be inconsistent with the legislature's expressed intent that the term 'restitution' has the same meaning in the criminal and juvenile codes—that is, 'restitution' would mean payment of economic damages to one group in the Criminal Code, and payment of economic damages to a different group in the Juvenile Code."

*E. V.*, 240 Or App at 302. We reach the same conclusion regarding another component of the statutory definition of restitution—the term "economic damages." Like "victim," the term "economic damages" is a component part of the statutory definition of "restitution." Specifically, ORS 137.103(2) provides (with one exception not relevant here) that the term "economic damages" has the same meaning given that term in ORS 31.710. ORS 31.710(2)(a), in turn, defines "economic damages," in relevant part, as: "objectively verifiable monetary losses including but not limited to *reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services* and other health care services ***." (Emphasis added.) Applying that meaning of economic damages and the cases construing that term to

---

[2] At the time of youth's adjudication, ORS 419A.004(26) was numbered ORS 419A.004(23), but it was otherwise identical. Because it has no bearing on the merits of this case, we use that provision's current numbering in this opinion.

youth's case, we conclude that the juvenile court erred in awarding restitution for the victim's treatment at Silverton Hospital.

As we have previously explained, "'there are three prerequisites to an order of restitution: (1) criminal activities, (2) economic damages, and (3) a causal relationship between the two.'" *McClelland*, 278 Or App at 141 (quoting *Pumphrey*, 266 Or App at 733). Further, for hospital or medical expenses to qualify as recoverable economic damages, the state must prove that the cost of such services was reasonable. *State v. Campbell*, 296 Or App 22, 27, 438 P3d 448 (2019). In that regard, "submission of a hospital bill, without more, is insufficient proof for recovery of 'reasonable' hospital or medical services. Some additional testimony or evidence is required to support the reasonableness of the bill for the hospital or medical services." *McClelland*, 278 Or App at 144. We have recently clarified, however, that "the market rate is a reasonable amount for a victim to recover for medical expenses." *Campbell*, 296 Or App at 30. And, in that case, we further concluded that the fact that a publicly funded health insurer has paid a medical bill is "some indication of the charge's reasonableness." *Id.* at 31-32.

In *Campbell*, a witness testified that the amounts that were paid by CareOregon—a publicly funded health insurer—were at or below the usual and customary rate for those services in that market. 296 Or App at 32. Based on that testimony, we concluded that the record contained sufficient evidence that the requested restitution to CareOregon was reasonable. *Id.* After reaching that conclusion, however, we went on to say that "[o]ur conclusion is required for the added reason that the payments were made by a publicly funded health insurer who, by design, can only make payments at reasonable rates." *Id.* That is because of the applicable statutory and regulatory scheme. *See* ORS 414.065(1)(a) (requiring the Oregon Health Authority to set "[r]*easonable* fees, charges, daily rates and global payments for meeting the costs of providing health services to an applicant or recipient" as well as "[r]*easonable* fees for professional medical and dental services which may be based on *usual and customary* fees in the locality for similar services" (emphases added)).

At first blush, the state's argument in the present case may appear similar to the argument that we accepted in *Campbell*. Like CareOregon, CVCP is subject to a statutory and regulatory scheme. Specifically, CVCP is governed by ORS 147.035(2)(a), which states that it may provide compensation for "*reasonable* medical and hospital expenses." (Emphasis added.) *See also* OAR 137-076-0020(3) (defining "reasonable expenses" for purposes of ORS 147.035).[3] Despite that superficial similarity, however, we for two reasons are not convinced that the logic applied in *Campbell* is appropriate in this case. First, the underlying statutory and regulatory scheme was not the *only* evidence in *Campbell* of the bill's reasonableness. Rather, a witness testified that the amounts that CareOregon paid were at or below the usual and customary rate for those services in that market. *Campbell*, 296 Or App at 32. In contrast, in the present case, the state presented *no evidence* about the Silverton Hospital bill beyond the bill itself. No witness testified that the amount charged—or the amount subsequently paid by CVCP—was at or below the market rate for those services, nor was there any other evidence as to the reasonableness of the medical bill.

Second, the statutory and regulatory scheme governing publicly funded health insurers is both more comprehensive and prescriptive than that which governs CVCP. As *Campbell* explained:

> "In [determining the usual and customary fees in the locality for similar services], the Oregon Health Authority must consult with the Medicaid Advisory Committee whose members include, in part, a licensed physician, health care providers, two members of health care consumer groups that include Medicaid recipients, and two Medicaid

---

[3]  OAR 137-076-0020(3) specifically provides:

"For purposes of ORS 147.035, reasonable medical expenses shall be limited to ambulance expenses and expenses for necessary services provided by a Medical Practitioner. Medical treatment provided by any other medical provider may be reimbursable if at the time treatment began it was approved by and provided under the supervision of a Medical Practitioner. Medical treatment provided by any other medical provider without a referral from a Medical Practitioner may be compensated for up to 5 visits within 90 days from the date of the first crime-related visit by the victim, at the discretion of the Department, if the medical provider is licensed in Oregon under the provisions governing that provider's profession."

recipients. ORS 414.25; ORS 414.211. By legal mandate, the state's payment rates are intended to reflect the usual and customary fees at or below the local market rate, taking into account what doctors, consumers, and other stakeholders consider reasonable.

"[Further, f]ederal laws and regulations subject Oregon payment rates to additional oversight."

*Campbell*, 296 Or App at 32-23. After reviewing the statutory and regulatory scheme that governs CVCP, ORS 147.035 (2)(a) and OAR 137-076-0020(3), we cannot conclude that it is comparable to that which governs publicly funded health insurers. The complex statutory and regulatory scheme in *Campbell* is what compelled us to conclude that the amounts paid by a publicly funded health insurer are indicative of the reasonableness of that amount. And, although CVCP appears to be under a statutory duty to provide compensation for only those medical bills that it deems "reasonable," there is simply not the same level of oversight or direction as to what that "reasonable" charge may be. That is, in the publicly funded health insurer context, the Oregon Health Authority must consult with the Medicaid Advisory Committee to set rates that are at or below market value while also conforming to federal statutes and regulations. In the CVCP context, on the other hand, governing provisions of law do not dictate how reasonable medical fees are to be determined, who is to participate in that determination, or what relationship, if any, they must bear to prevailing market rates. Accordingly, there is simply no evidence here that CVCP's duty under ORS 147.035(2)(a) is comparable to that imposed under the statutory and regulatory scheme that we considered in *Campbell*.

Without any evidence as to the reasonableness of the Silverton Hospital bill paid by CVCP or other persuasive argument regarding CVCP's duty to pay only reasonable medical bills, we conclude that the trial court erred in including that portion of the victim's medical expenses in the supplemental judgment.

Supplemental judgment vacated and remanded.